IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZERO TECHNOLOGIES, LLC,<br><br>                    Plaintiff,<br><br>            v.<br><br>THE CLOROX COMPANY AND BRITA, LP,<br><br>                    Defendants. | Case No. 2:22-cv-03989<br><br>Hon. Kelley Hodge |

**DEFENDANTS' REPLY IN SUPPORT OF**
**<u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. The Court should enter judgment on ZeroWater's monopolization claims ............ 1

        1. ZeroWater tacitly concedes the '141 Patent is not standard essential ................................................................................................. 1

        2. ZeroWater fails to plausibly allege a *Rambus* patent ambush claim .......... 3

        3. ZeroWater fails to plausibly allege a *Broadcom* patent ambush claim ................................................................................................................ 5

        4. The Court should reject ZeroWater's attempt to manufacture a patent ambush theory separate from *Rambus* and *Broadcom* ..................... 6

        5. ZeroWater fails to satisfy the monopoly power requirement ...................... 7

        6. ZeroWater fails to plausibly allege antitrust injury ..................................... 8

    B. The Court should enter judgment on ZeroWater's contract claims ......................... 9

III. CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Actividentity Corp. v. Intercede Grp. PLC*,
    2009 WL 8674284 (N.D. Cal. Sept. 11, 2009) ............................................................................ 5

*AlphaCard Sys. LLC v. Fery LLC*,
    2021 WL 2190901 (D.N.J. May 31, 2021) ................................................................................ 8

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc. ("Amphastar I")*,
    850 F.3d 52, 57 n.4 (1st Cir. 2017) ............................................................................. 3, 4, 5, 6

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc. ("Amphastar II")*,
    297 F. Supp. 3d 222, 229 (D. Mass. Mar. 19, 2018) ............................................................ 3, 4

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ........................................................................... 1

*Apple, Inc. v. Motorola Mobility, Inc.*,
    886 F. Supp. 2d 1061 (W.D. Wis. 2012) ................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................. 7

*Blix Inc. v. Apple, Inc.*,
    2020 WL 7027494 (D. Del. Nov. 30, 2020) ............................................................................. 7

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ........................................................................................ 1, 5, 6, 7

*Federico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ..................................................................................................... 9

*G+ Comms., LLC v. Samsung Elecs. Co. Ltd.*,
    2023 WL 3167416 (E.D. Tex. Apr. 28, 2023) ........................................................................ 10

*Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*,
    2017 WL 750700 (D. Del. Feb. 27, 2017) ................................................................................ 5

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    407 F. Supp. 3d 631 (E.D. Tex. 2019) ..................................................................................... 2

*Hughes v. UPS*,
    639 Fed. App'x 99 (3d Cir. 2016) ......................................................................................... 6, 8

*Litman v. Geico Cas. Co.*,
  2023 WL 5985286 (E.D. Pa. Sept. 13, 2023) ................................................................................2

*Microsoft Corp. v. Motorola Inc.*,
  864 F. Supp. 2d 1023 (W.D. Wash. June 6, 2012) ..................................................................5, 6

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
  2016 WL 1464545 (D. Del. Apr. 13, 2016) ................................................................................5

*Provepharm, Inc. v. Akorn, Inc.*,
  2019 WL 2443185 (E.D.N.Y. June 11, 2019) .........................................................................4, 5

*Rambus Inc. v. F.T.C.*,
  522 F.3d 456 (Fed. Cir. 2008) ............................................................................................ passim

*Rivers v. Nat'l Ass'n of Letter Carriers*,
  2016 WL 389983 (D.N.J. Feb. 1, 2016) .....................................................................................2

*Synthes, Inc. v. Emerge Med., Inc.*,
  2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) .............................................................................7

**Statutes**

15 U.S.C. § 2 ................................................................................................................... passim

**Other Authorities**

7 Eric E. Benson, *Patent Law Perspectives* § 12.6 (2nd ed. 2024) .................................................2

I.       INTRODUCTION

ZeroWater's patent ambush theory fails—whether analyzed under *Rambus*, *Broadcom*, or any other standard—because ZeroWater does not and cannot allege each essential element of its monopolization claims. ZeroWater's Opposition ("Opp.") attempts to remedy these defects by manufacturing a new type of patent ambush claim, relying on inapposite case law, and amending its Complaint through its Opposition brief, but ZeroWater still fails plead that the '141 Patent is standard essential, that Defendants had monopoly power, or that Defendants' conduct caused antitrust injury. Likewise, ZeroWater cannot remedy its failure to plead any contract between Defendants and NSF, or that ZeroWater was a third-party beneficiary of any such contract, by relying on inapposite FRAND licensing cases. Accordingly, the Court should enter judgment on the pleadings in favor of Defendants on Counts I, II, IV, and V of ZeroWater's Complaint.

II.      ARGUMENT

    A.     **The Court should enter judgment on ZeroWater's monopolization claims**

        1.     **ZeroWater tacitly concedes the '141 Patent is not standard essential**

ZeroWater's Opposition fails to address any of Defendants' arguments that the '141 Patent is not essential to the NSF 53 Standard, which is fatal to the monopolization and attempt claims.

Under any theory of patent ambush, a plaintiff must plead that the patent is standard essential. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2011 WL 4948567, at *4 n.6, *5 (N.D. Cal. Oct. 18, 2011) ("[I]f the patents at issue are non-essential, then the 'lock-in' effect of the standard setting does not exist"). ZeroWater cites no authority to the contrary, and indeed, every patent ambush case ZeroWater relies upon in its Opposition involves an SEP. *See generally* Opp. A patent is "essential" to a standard ***only*** if it is ***not technically possible*** to practice the standard without infringing the patent. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 634 (E.D. Tex. 2019).

1

Neither ZeroWater's Complaint nor Opposition contends that it is not technically possible to practice the NSF 53 Standard without infringing the '141 Patent. Nor could they. ZeroWater's verified Response to the ITC Complaint attests that it currently sells NSF 53 Standard-certified water filters that ***do not infringe*** the '141 Patent. (*See* Dkt. 67-5, ¶ 69.) This would be impossible if the '141 Patent was essential to the NSF 53 Standard. In other words, ZeroWater represented to the ITC that it ***is*** "technically possible" to practice the NSF 53 Standard ***without*** infringing the '141 Patent because the '141 Patent is not the exclusive method by which to achieve the Standard.

Tacitly conceding it cannot allege the '141 Patent is standard essential, ZeroWater instead alleges "that to market a ***commercially viable*** product that meets the [NSF 53 Standard], one must infringe the '141 Patent." (Opp. at 9 (emphasis added).) But that is not the standard for an SEP; "commercial viability" does not determine whether a patent is "essential." *See* 7 Eric E. Benson, *Patent Law Perspectives* § 12.6 (2nd ed. 2024) (citation omitted) ("a patent is 'essential if it is not possible on technical ***(but not commercial)*** grounds'" to practice the standard without infringing the patent) (emphasis added). And ZeroWater cites no case that has applied its proposed standard.

Apart from its inapposite "commercial viability" allegation, ZeroWater fails to address any of Defendants' arguments that the '141 Patent is not essential to the NSF 53 Standard, and thus concedes them.[1] For example, ZeroWater does not dispute that Defendants have never asserted that the '141 Patent is standard essential. ZeroWater also does not dispute that the NSF 53 Standard does not prescribe ***how*** to comply with its minimum requirements, nor mandate any technology required to meet the Standard. (Mot. at 12-13.) ZeroWater thus fails to plead, as is necessary for any patent ambush theory, that the '141 Patent is essential to the NSF 53 Standard.

---

[1] *Litman v. Geico Cas. Co.*, 2023 WL 5985286, at *3 (E.D. Pa. Sept. 13, 2023) ("Plaintiffs' Response fails to address, and so concedes, Defendant's arguments."); *Rivers v. Nat'l Ass'n of Letter Carriers*, 2016 WL 389983, at *2 (D.N.J. Feb. 1, 2016) (plaintiff's failure to "address [a] point in [its] opposition briefs…[is] a concession that Defendants are correct").

### 2. ZeroWater fails to plausibly allege a *Rambus* patent ambush claim

ZeroWater's claims fail under *Rambus* for several independent reasons. First, it has not alleged that NSF had an unambiguous policy outlining that Defendants were required to disclose non-SEPs, like the '141 Patent. (Mot. at 15-17); *Rambus Inc. v. F.T.C.*, 522 F.3d 456, 468 (Fed. Cir. 2008) (to allege a patent ambush a plaintiff must allege the SSO provided "clear guidance" to its members on the "what, when, how, and to whom the members must disclose").[2] Despite alleging in its Complaint that Defendants "had a continuing obligation to disclose the existence of [their] patent rights, pending applications, intentions and developing technology that implicated the proposed standard," (Compl. ¶ 57), ZeroWater appears to have abandoned that argument. Rather, ZeroWater now admits the ANSI Essential Requirements only require a member to provide assurances that the "party does not hold [or intend to hold] any **essential patent claim(s)**," (Opp. at 6), which ZeroWater tacitly concedes the '141 Patent is not. If ZeroWater itself cannot articulate the disclosure policy consistently across its filings, then it fails to plausibly allege that any NSF policy unambiguously required Defendants to disclose their non-SEP '141 Patent to the NSF.

Second, judgment should be entered because ZeroWater concedes that it cannot satisfy *Rambus*'s causation requirement: that NSF would have adopted an alternative standard had Defendants disclosed the '141 Patent. (Opp. at 11-12.) Instead, ZeroWater attempts to sidestep this deficiency by arguing that cases involving "testing standards – where there are not alternative technologies at issue but rather a consensus on the *way* to test something" are not subject to the *Rambus* causation requirement. (*Id.* at 12.) Yet, neither of ZeroWater's cited *Amphastar* decisions discuss *Rambus* at all, let alone excuse ZeroWater from satisfying the causation requirement.

---

[2] ZeroWater correctly points out that *Rambus* identified a deficiency of proof, not pleading, but numerous courts—including those cited by ZeroWater—have applied *Rambus*'s reasoning and dismissed claims at the pleading stage. (*See* Mot. at 14 (citing *Apple*, 2011 WL 4948567, at *16-20; *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1018-19 (N.D. Cal. 2014)).)

The *Amphastar* cases do not stand for the proposition that the *Rambus* causation requirement is "inappropriate for resolution on a motion to dismiss" in the context of a "testing standard." (*See* Opp. at 12-13.) Instead, in *Amphastar I*, the First Circuit explicitly stated that it "express[ed] no opinion on whether Amphastar's allegations are sufficient to state a [patent ambush claim]," holding **only** that the defendants were not immune under *Noerr-Pennington*. *Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 57 n.4 (1st Cir. 2017). On remand, the district court held that the complaint adequately alleged anticompetitive conduct, but it did not, as ZeroWater claims, hold that "with regards to standards for testing, 'the existence of alternatives is a factual question inappropriate for resolution on a motion to dismiss.'" (*See* Opp. at 12-13 (quoting *Amphastar II*, 297 F. Supp. 3d 222, 229 (D. Mass. Mar. 19, 2018). This quote is taken out of context, as the *Amphastar II* court was addressing whether the plaintiff had been excluded from the relevant market because the patented methodology was not mandatory and there were "alternatives," rather than the *Rambus* causation requirement. 297 F. Supp. 3d at 229.

ZeroWater's other cited authority, *Provepharm, Inc. v. Akorn, Inc.*, is distinguishable as ZeroWater does not allege that Defendants initiated the update to the NSF 53 Standard. 2019 WL 2443185 (E.D.N.Y. June 11, 2019). In *Provepharm*, the plaintiffs alleged the defendant concealed that it owned patents necessary to manufacture methylene blue in the form that it urged the SSO to adopt as the standard. *Id*. at *8-9. The court found that the defendants' "**solicitation of the [SSO]** to revise the pre-existing [standard] to include its [patented technology] without disclosing its patented rights to the [SSO] plausibly suggested that the [SSO] would not have revised the existing [standard] as requested by [defendant] had [defendant] disclosed its patent right." *Id*. at *13 (emphasis added). Here, in contrast, ZeroWater does not allege that Defendants initiated or solicited the NSF to update the NSF 53 Standard, only that they participated in the standard-setting

4

process.  As a result, unlike in *Provepharm*, the Court cannot make the same inference that "***the standard would not have been revised … at all***" as ZeroWater suggests.  (*See* Opp. at 13.)

Third, ZeroWater's claim fails because the "read-on" element from *Actividentity* is found nowhere in the text of *Rambus*, and instead is a clear attempt to gloss over ZeroWater's inability to assert that the '141 Patent is standard essential.  (*See* Opp. at 8-9 (*citing Actividentity Corp. v. Intercede Grp. PLC*, 2009 WL 8674284, at *3 (N.D. Cal. Sept. 11, 2009).)  ZeroWater claims that the "read-on" element is satisfied by "alleg[ing] that to market a commercially viable product . . . one must infringe the [] patent."[3]  (Opp. at 9.)  However, this holding appears nowhere in *Actividentity* and ZeroWater cites no other authority for this proposition.

### 3. ZeroWater fails to plausibly allege a *Broadcom* patent ambush claim

ZeroWater cannot escape the *Broadcom* requirement to plead "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms."  *Broadcom*, 501 F.3d at 314.  Despite citing this requirement, ZeroWater argues that "*Broadcom* imposes no affirmative requirement that there be an offer of a license by the patent holder."  (Opp. at 15.)  This is wrong.  A false FRAND license commitment is a critical element of the *Broadcom* test, as confirmed by every court in the Third Circuit to address this issue, since the extraction of supracompetitive royalties **through the license** is the crux of the alleged anticompetitive harm.  (*See* Mot. at 9-11); *see also, e.g.*, *Broadcom*, 501 F.3d at 310; *Microsoft Mobile Inc. v. Interdigital, Inc.*, 2016 WL 1464545, at *1 (D. Del. Apr. 13, 2016); *Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 2017 WL 750700, at *6 (D. Del. Feb. 27, 2017).[4]

---

[3] Contrary to ZeroWater's claim, the issue of whether the '141 Patent covers all commercially viable competing products is not a disputed fact because ZeroWater admits that it currently sells products certified under the NSF 53 Standard that do not infringe the '141 Patent, and other competitors sell them as well.  (*See* Dkt. 67-5, ¶ 69; *see also* Dkt. 67-10 at CXPI-14.)

[4] *Microsoft* and *Amphastar I* are inapposite here.  *Microsoft Corp. v. Motorola Inc.* is a breach of

5

Unable to cite any authority for its claim that Brita's initiation of patent infringement lawsuits—in the absence of any demand for supracompetitive royalties from its competitors—can constitute anticompetitive conduct under the Sherman Act, ZeroWater resorts to improperly attempting to bolster its allegations. First, ZeroWater speculates for the first time that Brita's patent infringement cases are "plausibly [] a tactic aimed at ultimately extracting supracompetitive royalties." (Opp. at 16.) Second, ZeroWater asserts that Defendants' "manipulation of the market ha[s] created the structural *potential* to extract unfair royalties." (*Id*.) These assertions are found nowhere in the Complaint and must be disregarded. *See Hughes v. UPS*, 639 Fed. App'x 99, 104 (3d Cir. 2016) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition.") (quoting *Pa. ex rel Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988)).[5]

### 4. The Court should reject ZeroWater's attempt to manufacture a patent ambush theory separate from *Rambus* and *Broadcom*

Recognizing that its allegations are insufficient under either *Rambus* or *Broadcom*, ZeroWater attempts to invent a new theory of anticompetitive conduct. ZeroWater claims that *Rambus* and *Broadcom* do not "narrowly circumscribe the *only* SSO-related misconduct that might run afoul of the antitrust laws," but cites no supporting authority. (Opp. at 4.) Unable to find a single case to support its broad theory of patent ambush, ZeroWater tries to patch together dicta and reasoning from cases following *Rambus* and *Broadcom* to manufacture its own standard. ZeroWater argues that because "SSOs are inherently anticompetitive," any attempt to "sidestep" the "safeguards" instituted by an SSO may constitute anticompetitive conduct. (*Id*. at 4-5.) No

---

contract case decided at summary judgment and makes no mention of *Broadcom* or the Sherman Act. 864 F. Supp. 2d 1023 (W.D. Wash. June 6, 2012). The *Amphastar I* court ruled only on the application of *Noerr-Pennington* immunity, and did not apply *Broadcom*. 850 F.3d at 57 n.4.

[5] ZeroWater also misconstrues Defendants' *Noerr-Pennington* argument. Defendants do not argue that Brita's conduct before the NSF is wholly immune under *Noerr-Pennington*, but rather that its patent infringement suits ***alone*** cannot be anticompetitive conduct. (Mot. at 10 n.3.)

6

court has ever applied this standard to determine whether alleged misconduct before an SSO is anticompetitive, and this Court should reject ZeroWater's new "safeguards" standard.

Even if the Court were to entertain this new theory of anticompetitive conduct, it is unclear how the Court could apply it. ZeroWater does not define what is a "safeguard," nor what it means to "sidestep" such a safeguard. It conclusorily asserts that the NSF's alleged patent policies are safeguards and that Defendants' alleged conduct sidesteps those safeguards, with no analysis whatsoever. (Opp. at 5-8.) ZeroWater simply asserts that "[t]h[e] facts alone plausibly allege a violation of Section 2 of the Sherman Act." (*Id*. at 8.) Such conclusory allegations fall far short of *Twombly*'s plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007).

### 5. ZeroWater fails to satisfy the monopoly power requirement

ZeroWater completely ignores Defendants' cited case law that defeats its monopoly power arguments. (Mot. at 19-20.) First, ZeroWater argues that it is reasonable to infer Defendants' share of the relevant market from their share of the broader "water filter products market." (Opp. at 18 n.12.) But its argument is squarely rejected by the *Synthes* court and ZeroWater offers no other authority. *Synthes, Inc. v. Emerge Med., Inc*., 2012 WL 4473228 at *11 (E.D. Pa. Sept. 28, 2012) (a plaintiff has effectively "failed to put forth any allegations" regarding monopoly power where its only allegation focuses on a broader market, not the relevant market it pleaded).

Second, ZeroWater argues that it has "plead monopoly power directly" by alleging that "Brita is or will be able to charge monopoly prices in the relevant market." (Opp. at 18.) But the Complaint nowhere alleges that Brita **is currently** charging monopoly prices. (*See* Compl. ¶ 16.) And, as the *Blix* court made clear—and ZeroWater does not dispute—the **ability** to charge monopoly prices is not direct evidence of monopoly power. *Blix Inc. v. Apple, Inc*., 2020 WL 7027494, at *6 (D. Del. Nov. 30, 2020) ("allegations that Apple has the *power* to restrict output are not equivalent to allegations that Apple [] **actually restricted output**") (emphasis in original).

7

Finally, ZeroWater, on information and belief, makes the conclusory allegation for the first time that "Brita has a relevant market share in the neighborhood of 65%-75%." (Opp. at 19.) Putting aside that this number appears to be fabricated from whole cloth, ZeroWater fails to plead any market shares in its Complaint and may not amend or rectify that fatal deficiency through its Opposition. *See Hughes*, 639 Fed. App'x at 104. ZeroWater's monopoly power allegations fall far short of its pleading burden, requiring entry of judgment for Defendants.

### 6. ZeroWater fails to plausibly allege antitrust injury

ZeroWater's arguments that "presumably" all the harms suffered by ZeroWater must have been suffered by its competitors are raised in its Opposition for the first time and should be disregarded. (*See* Opp. at 17-19); *Hughes*, 639 Fed. App'x at 104.

ZeroWater's arguments are identical to those rejected by *AlphaCard*, which ZeroWater entirely ignores. (Mot. at 22-23.) In *AlphaCard,* the court held that the "[plaintiffs'] conclusory assertion that [defendants had] 'excluded market entrants' [was] insufficient to state an antitrust injury." *AlphaCard Sys. LLC v. Fery LLC*, 2021 WL 2190901, at *3 (D.N.J. May 31, 2021). The court reasoned that the plaintiffs "provide[d] no factual allegations to support [their] claim that [defendants] excluded market entrants" and that their own description of the market "suggest[ed] that no market entrants ha[d] been excluded." *Id*. Here, similarly, ZeroWater alleges no specific *facts* to support its conclusory assertion that Defendants' conduct "exclude[s] from the market all commercially viable competing products that meet the NSF/ANSI 53 [Standard]." (Opp. at 19.) Moreover, ZeroWater's new Opposition argument that Defendants possess a "65-75%" share of the relevant market undermines its antitrust injury argument. (*Id*.) As in *AlphaCard*, ZeroWater's admission that Brita's competitors for NSF/ANSI 53 lead-certified high-performance gravity-fed water filters **control a third of the relevant market** "suggests that no market entrants have been excluded" by Defendants' alleged conduct. *See* 2021 WL 2190901, at *3.

8

ZeroWater further fails to respond to Defendants' argument that its alleged antitrust injury cannot "flow" from Brita's alleged failure to disclose the '141 Patent. (Mot. at 23.) As ZeroWater concedes, these alleged injuries will only come to pass, if at all, if Brita obtains an exclusion order, which it has not. ZeroWater and Brita's competitors continue to reap the benefits of maintaining NSF certification and therefore have not suffered any antitrust injury.

### B. The Court should enter judgment on ZeroWater's contract claims

ZeroWater's Complaint does not identify any specific contract that Defendants allegedly breached, let alone how ZeroWater was an intended third-party beneficiary of any such contract. ZeroWater's Opposition attempts to distract from these fatal pleading deficiencies by rewriting its theories and relying on inapposite case law.

To attempt to remedy its failure to identify any specific contracts that Defendants entered into with NSF, ZeroWater points to portions of the Complaint discussing NSF's Antitrust Guide, the ANSI Essential Requirements, ANSI's Patent Policy, and NSF's Standards Development and Maintenance Policies. (Compl. ¶¶ 38-51, 161.) But ZeroWater's Complaint does not actually identify these documents as the *source* of any contractual rights, instead merely alleging that Defendants entered into vague, undisclosed "express or implied contractual commitments with NSF and its members and affiliates relating to the NSF/ANSI 53 standard." (Compl. ¶ 161.) ZeroWater is bound by the allegations that it actually pled, because it is well settled that a plaintiff cannot amend its pleadings through its opposition brief to a motion to dismiss. *See Federico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007). Further, ZeroWater's cited cases are readily distinguishable because they each involve SSO commitments to license intellectual property on FRAND terms, whereas this case involves no such commitment to license on FRAND terms. (*See* Opp. at 21-22). Accordingly, ZeroWater's failure to identify the specific contracts that Defendants allegedly breached is sufficient to enter judgment on its breach of contract claims.

9

ZeroWater's Opposition cannot cure its failure to plausibly allege how or why it was an intended third-party beneficiary of any purported contact between Defendants and NSF, either. Instead of pointing to its Complaint, ZeroWater claims that "case law establishes that one who implements a standard promulgated by an SSO is a third-party beneficiary of the contractual SSO policies governing the development of that standard." (Opp. at 22). But again, ZeroWater relies on an inapposite line of cases finding that a commitment to license technology on FRAND terms is a binding contract for which other members of the SSO are intended third-party beneficiaries. *Cf. Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1085 (W.D. Wis. 2012) (finding Apple was a third-party beneficiary of SSO contracts where the "primary purpose" of the two SSOs' intellectual property rights policies was to protect companies seeking licenses on FRAND terms); *G+ Comms., LLC v. Samsung Elecs. Co. Ltd.*, 2023 WL 3167416, at *4 (E.D. Tex. Apr. 28, 2023) (finding G+ was an intended third-party beneficiary of contract between Samsung and SSO, because SSO policy required members to take licenses at FRAND rates). As discussed above, ZeroWater does not allege that Defendants ever made a FRAND commitment to the NSF—or ever even attempted to license the '141 Patent. These cases are thus insufficient to overcome the pleading defect that ZeroWater is not a third-party beneficiary of any alleged contract.

ZeroWater's claim for breach of covenant of good faith and fair dealing claim also fails because Pennsylvania does not recognize such an independent cause of action. ZeroWater appears to concede (as it must) that there is no such cause of action under Pennsylvania law, instead arguing that this claim should be subsumed within ZeroWater's breach of contract claim. (*See* Opp. at 24.) Accordingly, the breach of covenant of good faith and fair dealing claim should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter judgment on Counts I, II, IV, and V of ZeroWater's Complaint.

DATED: July 2, 2024				Respectfully submitted,


				 /s/ Bonnie Lau
				Bonnie Lau (admitted *pro hac vice*)
				Email: BLau@mofo.com
				425 Market Street
				San Francisco, CA 94105-2482
				Telephone:  (415) 268-7500
				Facsimile:  (415) 268-7522

				Lisa M. Phelan, Bar No. 46969
				Alexander P. Okuliar (admitted *pro hac vice)*
				Morrison & Foerster LLP
				2100 L Street, NW
				Suite 900
				Washington, D.C., 20037
				LPhelan@mofo.com
				AOkuliar@mofo.com
				Telephone:  (202) 887-1500
				Facsimile:  (202) 887-0763

				Attorney for Defendants
				*The Clorox Company and Brita, LP*